UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID GIBSON,

                            Plaintiff,

                  -against-

WARDEN JOHN DOE, E.M.T.C., et al.,

                            Defendants.

23-CV-9474 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

        Plaintiff, who is proceeding *pro se*, brings this action under 42 U.S.C. § 1983. He alleges

violations of his rights during his detention on Rikers Island, from September 20, 2023, until

October 23, 2023, and at a Manhattan courthouse during this time period. He claims he was held

at Rikers because he was accused of violating his parole. He also asserts claims based on events

during his hospitalization at Elmhurst Hospital in Queens County. By order dated March 1, 2024,

the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without

prepayment of fees. [1] For the reasons set forth in this order, the Court grants Plaintiff 60 days,

from the date of this order, to file an amended complaint. The Court also refers Plaintiff to the

pro se legal clinic for assistance in amending his pleading.

---

[1] Plaintiff filed this action on October 23, 2023, the same day he was released from custody. By order dated July 8, 2024, the Court directed Plaintiff to show cause why his IFP status should not be revoked because it appeared that, under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), he was barred from proceeding IFP. Upon further examination of Plaintiff's submissions, however, the Court has determined that Plaintiff filed this action in person and was not in custody at the time he filed the action; consequently, the Court concludes that the PLRA does not apply to this case because Plaintiff was not a "prisoner" at the time he filed the action. *See* 28 U.S.C. § 1915(h) (defining the term "prisoner" in the PLRA).

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

This action concerns Plaintiff's detention on Rikers Island in the Eric M. Taylor Center ("EMTC"), two strip searches at a Manhattan courthouse, and his hospitalization at Elmhurst Hospital. Plaintiff names as Defendants the following individuals: (1) EMTC Warden Jane Doe, Warden Harvey of Rikers Island, and Warden Vargas of Manhattan Court; (2) Nurse Medical Director Assistant; (3) Correction Officers Tojadas, Duncan, and Brown; (4) Deputies Hendrickson and Solomon; (5) EMTC Mailroom Supervisor; (6) PREA [Prison Rape Elimination Act] Coordinator; (7) Office of Mental Health ("OMH") Clinician; (8) Captain Jane Doe; (9) two John Doe officers, who strip searched Plaintiff, one on October 2, 2023, and the other on October 17, 2023; (10) Elmhurst Hospital Doctors Harri and Kopell, and Nurse S. Perrie; and (11) several other Doe defendants.

The following facts are drawn from the complaint.[2] On September 30, 2023, during Plaintiff's detention in EMTC's infirmary, "Plaintiff was asked by a doctor . . . to give blood." (ECF 1, 1.) Plaintiff, who "[i]s a active Rastafarian," does not "give blood or take x-rays . . . [because] it is seen as un-natural." (*Id.*) Defendant Nurse Medical Director Assistant "told C.O. Tojadas I should go to holding pen 5 CA Covid cell with feces on the wall." (*Id.*) "Tojadas then cut Plaintiff's water off and told Plaintiff to 'suck his dick.'" (*Id.*)

Plaintiff called PREA and spoke with Deputy Solomon and PREA Coordinator Jane Doe. He "asked that the video be frozen and attached to his 'PREA' complaint." (*Id.* at 2.) He also inquired about the PREA hotline, and this request was denied.

On October 7, 2023, "Plaintiff received certified mail from home[;] it was legal mail." (*Id.*) Plaintiff indicates he had a deadline in his legal proceeding, and that he filed a 311 complaint. EMTC Warden Jane Doe "continued to tamper with Plaintiff incoming mail and outgoing." (*Id.*) On October 11, 2023, Plaintiff "mailed out [a document] with a affidavit of service [and] . . . Plaintiff received notary aprox 10-10-23 after 4 to 11 shift." (*Id.*) "Plaintiff was denied mail for pending lawsuits" and grieved the issue on October 29, 2023 with Deputy Solomon and EMTC Warden. (*Id.*)

On October 2, 2023, Captain Jane Doe and a John Doe correction officer "subjected Plaintiff to a unlawful strip frisk for the second time leaving EMTC entering Manhattan court." (*Id.* at 3.) He "was but for held unlawful [in a] room [with] a blind spot . . . [where] all other room[s] have cameras." (*Id.* at 3.) On October 17, 2023, Plaintiff endured another strip search.

---

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

Plaintiff alleges that on September 29, 2023, he "was confined as a "B" misdemeanor, and . . . held at Rikers Island [illegally] by Warden "Jane Doe" "Harvey" whom is fully aware . . . [of the] Penal law." (*Id.* at 2-3.) He indicates that he "was held from 9-29-23 to 10-23-2[3][,] [when he] was released thr[ough] writ court motion [being] granted [and] all charges dismissed[.] (*Id.* at 5.) He contends that "30-30 law technical parolee violation can only d[o] 7 days of confinement." (*Id.*) He also contends his due process rights were violated because the charges against him were dismissed. (*Id.* at 3.) Finally, he contends that his sentence and imprisonment were "unlawful" and unconstitutional. (*Id.* at 4.)

At some point, possibly upon release from custody on Rikers Island, Plaintiff was transferred to "Elmhurst Psychiatric Ward" where doctors and nurses "gave Plaintiff a active Rastafarian a ult[imatum] to take psychiatric medication," in violation of Plaintiff's rights under the First Amendment. (*Id.* at 4.) Plaintiff states that he is "exempt from taking any[thing] un-natural," but "Defendant[s] were forcing Plaintiff to take Benadryl, Haldol, Ativan . . . three medication he has never taken." (*Id.*) Plaintiff "asked to speak to his attorney at the Legal Aid Society . . . [but later] was forced to take . . . medication." (*Id.*)

Plaintiff asserts claims against Defendants as follows: (1) Eighth and Fourteenth Amendment claims against the Rikers Island Wardens for "failure to intervene"; (2) failure to intervene claims against "Warden Manhattan Court," "Deputy Warden Manhattan Court," and John Does; (3) failure to intervene claims against Nurse "Assistant Medical Director Jane Doe Vargas"; (4) conditions of confinement claims against Officer Tojadas and "John Doe"; (5) mail claims against Deputy Solomon, "mailroom supervisor," Captain Wells, "Jane Doe"; (6) strip search claims against John Does associated with searches conducted on October 2, 2023, and

4

October 17, 2023; and (7) forced medication claims against Doctors Harri and Kopell, and Nurse

Perrie. Plaintiff seeks money damages.

## DISCUSSION

Plaintiff brings this Section 1983 action asserting six claims that arose during and,

possibly, immediately following his DOC custody.

First, when Plaintiff arrived at EMTC, after he refused the withdrawal of his blood for

religious reasons, correctional staff placed him in a "Covid" cell covered in feces, and Tojadas

turned off Plaintiff's water and told Plaintiff to "suck his dick."

Second, after Tojadas' comment, Plaintiff contacted Deputy Solomon and a Jane Doe

PREA coordinator, both of whom did not address his complaint.

Third, Plaintiff did not receive his legal mail, including pieces of mail that had been

forwarded to him from "home." The Warden of EMTC interfered with the free flow of his non-

legal mail.

Fourth, John Doe officers subjected Plaintiff to two strip searches in a Manhattan

courthouse.

Fifth, Plaintiff's detention on Rikers Island was unlawful because he was not released

after seven days of detention.

Sixth, possibly following Plaintiff's release, he was transferred to "Elmhurst Psychiatric

Ward," located in Queens County, where medical staff injected him with psychiatric medication

against his will.

These claims suggest potential violations of Plaintiff's rights, but, for the following

reasons, are insufficiently plead and therefore the complaint does not comply with Rule 8 of the

Federal Rules of Civil Procedure. The Court therefore grants Plaintiff leave to amend his

complaint.

A.    **Rule 8 of the Federal Rules of Civil Procedure**

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). The Court need not accept, however, "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

Plaintiff's six claims do not include enough facts to show that he is entitled to relief from a named defendant. The Court addresses each of the claims as follows.

B.    **First Claim: Refusal to provide blood and subsequent placement in cell**

For Plaintiff's first claim, he indicates that, after he refused to allow EMTC medical staff to draw his blood, he was placed in a Covid cell covered with feces and without water. To the extent that Plaintiff is alleging that medical staff placed him in an unhealthy cell and turned off his water because he refused to allow staff to draw his blood, which he indicates he did for religious reasons, the Court construes this complaint as a retaliation claim, in violation of the First Amendment. The Court also construes the complaint as asserting a conditions-of-confinement claim, with respect to Plaintiff's placement in an unhealthy cell, in violation of the Fourteenth Amendment.

1.      **First Amendment Retaliation**

To state a First Amendment retaliation claim, a complaint must include facts suggesting

"(1) that the . . . conduct at issue was protected, (2) that the defendant took adverse action against

the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the

adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009) (internal citation and

quotations omitted)).

Where a plaintiff refuses to provide blood for religious reasons, and correctional staff

consequently place the plaintiff in isolation pursuant to DOC regulations, the plaintiff may be

able to show that the placement was in retaliation for the plaintiff's exercise of his religion. *See,

e.g.*, *Davis v. City of New York*, 142 F. Supp. 2d 461, 463 (S.D.N.Y. 2001). Where a plaintiff

asserts a First Amendment retaliation claim, a plaintiff does "not have a protected right to be free

from medical isolation when he refuse[s] on religious grounds to submit to a blood test." *Id.* at

465. Such a plaintiff, however, "may have . . . a protected right to be free from . . . heightened

restrictions . . . if those restrictions were not rationally related to the [DOC's] legitimate interests

or there were alternatives that would better have accommodated prisoners with religious

objections to blood testing." *Id.* (denying summary judgment in case where DOC "require[d] that

prisoners submit to a blood test, . . . [and] mandated at most a two-week period of 'medical

isolation' should a prisoner refuse to submit to the test," *id.* at 463).

Here, Plaintiff's allegations does not include enough facts to suggest DOC staff retaliated

against him after he refused to submit to a blood test. Although Plaintiff's right to refuse having

his blood drawn is arguably protected under the First Amendment, the complaint does not

include any facts suggesting that his placement in an unhealthy cell was in retaliation for the

refusal to submit to a blood test. Rather, he states only that, after he refused to provide blood,

Nurse Medical Director Assistant stated that he needed to be placed in a specific cell. This

allegation does not suggest that placement was retaliatory but, rather, suggests that he was placed in isolation. Moreover, Plaintiff's allegation that Tojadas turned off his water does not suggest that the conduct itself was adverse because it is unclear how long Plaintiff was without water and the consequences of not having water. Without more facts describing what exactly occurred (including what, if anything was said) after Plaintiff refused to give blood, Plaintiff cannot state a First Amendment retaliation claim against Nurse Medical Director Assistant and Officer Tojadas. The Court therefore grants Plaintiff leave to amend this claim.

### 2.    Conditions of Confinement

The Court also construes the allegations regarding the placement in the cell as a conditions of confinement claim, in violation of the Fourteenth Amendments.[3] To state a conditions of confinement claim, a plaintiff must satisfy two elements: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious to pose an unreasonable risk to the plaintiff's health or safety, and (2) a "mental" element, which requires a showing that a correction official acted with at least deliberate indifference to the challenged conditions. *See id.* at 29-33. A plaintiff satisfies the objective element of a conditions of confinement claim by "'show[ing] that the conditions, either alone or in combination, pose an

---

[3] District courts generally analyze constitutional claims asserted by detained parolees as arising under the Fourteenth Amendment. *See Blanch v. Schiff*, No. 18-CV-838 (NSR), 2021 WL 1177743, at *9 (S.D.N.Y. Mar. 26, 2021) ("The Second Circuit has not definitively addressed whether individuals detained for parole violations fall under the Eighth or Fourteenth Amendment. *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020). However, multiple courts within this circuit have held that that parolees fall under the Due Process Clause of the Fourteenth Amendment."); *Ruggiero v. Cnty of Orange*, No. 19-CV-3632 (VB), 2020 WL 5096032, at *8 (S.D.N.Y. Aug. 28, 2020) ("[S]ome courts have held probation violators are akin to pretrial detainees and thus analyzed their claims under the more lenient Due Process Clause of the Fourteenth Amendment"). The Court therefore assumes for the purposes of this order that Plaintiff's constitutional claims arise under the Due Process Clause of the Fourteenth Amendment.

unreasonable risk of serious damage to his health'" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)).

To satisfy the mental element, a plaintiff must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. The mere negligence of an official is not a basis for a claim of a federal constitutional violation under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

Here, Plaintiff's allegation that he was placed in a "Covid" cell covered in feces does not state a conditions of confinement claim. First, although the conditions of this cell suggest an unhealthy environment, it is unclear what Plaintiff means when he describes the cell as a "Covid" cell. Second, Plaintiff does not state facts suggesting that the conditions of this cell posed an unreasonable risk or serious damage to his health. Third, Plaintiff does not state facts suggesting that the Nurse Medical Director Assistant knew, or should have known, that the conditions of Plaintiff's cell posed an excessive risk to Plaintiff's health. The complaint therefore does not state a viable conditions-of-confinement claim against Nurse Medical Director Assistant, and the Court grants Plaintiff leave to amend this claim.

## C.    Second Claim: Claims concerning sexual harassment and/or abuse

Plaintiff brings claims regarding a PREA complaint, though it is unclear whether this claim was in response to Officer Tojadas' "suck my dick" comment or to another incident entirely. To the extent Plaintiff seeks to bring a claim under PREA, including a claim for failure to investigate a PREA complaint, PREA does not provide a private right of action to assert such

claims in federal court. To the extent Plaintiff seeks to bring a claim against Tojadas for his comment, Plaintiff fails to state a viable constitutional claim, but the Court grants him leave to amend this claim. Finally, to the extent Plaintiff seeks to assert a claim regarding another incident that he reported to Deputy Solomon and the PREA coordinator, the Court grants him leave to amend this claim to provide more facts about the incident.

### 1.    Claims brought under PREA

PREA does not provide individuals with a private right of action to assert claims in federal court. *See Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *10 (S.D.N.Y. Sept. 26, 2019) (collecting cases). Moreover, "[t]o the extent that Plaintiff's claim is based on a failure to investigate his allegations of sexual assault under [PREA], it must be dismissed because nothing in the statute suggests that PREA intended to establish a private claim for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a claim by an inmate." *Abreu v. Brown*, No. 14-CV-6599, 2018 WL 565280, at *9 (W.D.N.Y. Jan. 22, 2018) (citation and quotation marks omitted); *see Morgan v. Shivers*, No. 14-CV-7921, 2018 WL 618451, at *7 (S.D.N.Y. Jan. 29, 2018) (same); *see generally Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir.1985) ("Clearly, a violation of state law is not cognizable under § 1983[.]"). Accordingly, any independent claim Plaintiff seeks to assert under PREA against Deputy Solomon and PREA coordinator is dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    Claims against Officer Tojadas regarding his comment

Plaintiff's allegation, that Tojadas made an offensive statement to him, does not state a claim. Verbal abuse, threats, and intimidation standing alone, without injury or damage, do not amount to a constitutional deprivation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (name-calling without "any appreciable injury" is not a constitutional violation); *Little v. Mun.*

*Corp.*, 51 F. Supp. 3d 473, 500 (S.D.N.Y. 2014) ("[V]erbal harassment or profanity alone,

unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it

might seem, does not constitute the violation of any federally protected right and therefore is not

actionable under 42 U.S.C. § 1983[.]" (internal citation and quotation marks omitted)); *Jean-*

*Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) ("[V]erbal intimidation does

not rise to the level of a constitutional violation[.]").

      Moreover, where a comment includes a sexual connotation, sexual harassment alone,

without any physical contact, does not state a claim. *See Vogelfang v. Capra*, 889 F. Supp. 2d

489, 508 (S.D.N.Y. 2012) (noting that the court "found no case in which a plaintiff had

established an actionable claim of sexual harassment under *Boddie* [*v. Schnieder*, 105 F.3d 857

(2d Cir. 1997)], without having physical contact with the alleged perpetrator").

      Plaintiff's allegation, that Officer Tojadas told Plaintiff to "suck my dick," does not state

a claim because it does not include any allegations of injury or physical contact. Because

Plaintiff may have additional facts in support of this claim, the Court grants him leave to amend

this claim.

### 3.    Claims involving other incidents

      The complaint suggests that Plaintiff's PREA complaint may have concerned another

incident, separate from Tojadas' alleged comment. Generally, claims asserting sexual abuse by a

correction officer are treated as claims of violations of rights under both the Eighth and

Fourteenth Amendments. *Boddie*, 105 F.3d at 861 ("[A]llegations of sexual abuse may meet both

the subjective and the objective elements of the constitutional test, thereby stating an Eighth

Amendment claim under Section 1983."); *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015)

("A corrections officer's intentional contact with an inmate's genitalia or other intimate area,

which serves no penological purpose and is undertaken with the intent to gratify the officer's

sexual desire or humiliate the inmate, violates the Eighth Amendment."); *see, e.g.*, *Patterson v. Ponte*, No. 16-CV-3156 (PAE) (JCF), 2017 WL 1194489, at *8 (S.D.N.Y. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017) ("'Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind,' such allegations are cognizable as Fourteenth Amendment conditions of confinement claims.").

To the extent Plaintiff intended to assert a claim regarding a different incident, involving a sexual assault, the Court grants him leave to assert such a claim.

**D.      Third Claim: Legal and non-legal mail**

Plaintiff brings two claims against Deputy Solomon, a mailroom supervisor, Captain Wells, a Jane Doe, and the EMTC Warden regarding his mail. The first claim concerns his legal mail, and his second claim concerns his non-legal mail. Neither claim, as currently plead, states a valid claim for relief.

**1.      Legal Mail**

The Court construes Plaintiff's allegations regarding his legal mail as claims that he has been denied access to the courts, in violation of the First Amendment. Because Plaintiff's complaint does not state such a claim in a viable manner, the Court grants him leave to amend this claim.

To state an access to courts claim, a plaintiff must allege facts showing that the defendant's conduct: (1) "was deliberate and malicious," and (2) "resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To demonstrate actual injury, a plaintiff must allege: (1) a valid underlying cause of action separate from the access to courts claim; and (2) frustration or hindrance of the

underlying litigation caused by the defendant's actions. See *Harbury*, 536 U.S. at 415. Any underlying action must be "'nonfrivolous.'" *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff does not state an access to courts claim because he does not allege that any conduct on the part of any defendant was deliberate or malicious, or that any conduct on the part of correctional staff resulted in an actual injury. The Court therefore grants Plaintiff leave to amend this claim.

**2.     Non-legal mail**

Under the First Amendment, "adequate, effective and meaningful" access to the courts requires the free flow of incoming and outgoing mail. *Bounds v. Smith*, 430 U.S. 817, 822 (1977), *abrogated on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "[C]ourts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)). To state a First Amendment claim based on mail tampering, a plaintiff must allege either (1) "an ongoing practice of censorship unjustified by a substantial government interest," or (2) that "the tampering unjustifiably chilled the prisoner's right of access to the courts[.]" *Davis*, 320 F.3d at 351. Although "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation," even two incidents of mail tampering may constitute a First Amendment violation if these suggest an ongoing practice of censorship. *Id.*

Plaintiff does not state enough facts to suggest that any named defendant engaged in an ongoing, unsubstantiated practice of censoring Plaintiff's mail, or that such a practice chilled Plaintiff's speech. Rather, he generally claims that the warden of EMTC interfered with his mail, without providing any examples. The Court therefore grants Plaintiff leave to amend his claim.

**E.    Fourth Claim: Strip Searches**

Plaintiff alleges that, on two occasions, while he was awaiting a court hearing at a Manhattan courthouse, Defendants subjected him to an unlawful strip search. The Court construes these claims as arising under the Fourth Amendment. Plaintiff does not, however, provide enough facts to suggest that the searches were unconstitutional.

The protections of the Fourth Amendment, which prohibits unreasonable searches and seizures, "extend to prisoners and pretrial detainees." *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. June 24, 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). In determining the reasonableness of a search, courts must "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. In the setting of a jail or prison, "correctional officers must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," and deference must be given to such officers' judgment "unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 327 (2012) (citing *Bell*, 441 U.S. at 546). "Regardless of who performs the search, a visual body cavity search . . . is invasive: 'A strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy.'" *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (quoting *Florence*, 566 U.S. at 344-355 (Breyer, J., dissenting)).

Correction officials can conduct "random searches" of prisoners without having "reason to suspect a particular individual of concealing a prohibited item," *Florence*, 566 U.S. at 328, but such searches must be conducted pursuant to a jail or prison policy and must be reasonably related to a "legitimate penological justification," *Murphy v. Hughson*, 82 F.4th 177, 186 (2d Cir.

2023). Searches that involve intentional humiliation, abuse, or invasive touching may violate the Fourth Amendment. *Florence*, 566 U.S. at 339; *see also George v. City of New York*, Nos. 12-CV-6365, 13-CV-3511, 13-CV-3514 (PKC) (JLC), 2013 WL 5943206, at *7-8 (S.D.N.Y. Nov. 6, 2013) (where prisoners alleged that strip searches were performed to humiliate and to "make a spectacle" of them, they adequately pled a Fourth Amendment claim) (internal quotation mark omitted). The Supreme Court has upheld jail policies that require "*all* arriving detainees to undergo a visual body cavity search before entering the jail's general population, 'regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history.'" *Murphy*, 82 F.4th at 184 (2d Cir. 2023) (emphasis in original) (quoting *Florence*, 566 U.S. at 324-25).

Here, Plaintiff does not allege sufficient facts to state viable claims of allegedly unlawful searches. He does not allege any facts regarding the context of the searches. For example, he does not allege why he was searched, how the search was conducted (for example, whether it was a strip search or a visual body cavity search, or whether there was touching involved), or any facts suggesting that the search was performed to intentionally humiliate or abuse him. The Court therefore grants Plaintiff leave to amend this claim.

**F.    Fifth Claim: Unlawful detention**

Plaintiff contends that, because he was not released within seven days of his September 20, 2023 arrest, his detention on Rikers Island after seven days was unlawful, citing to New York's Speedy Trial statute, Criminal Procedure Law § 30.30. Plaintiff does not, however, provide enough information for the Court to consider the lawfulness of his detention. For example, it is unclear if Plaintiff is asserting that he was not afforded a hearing until the date he was released, on October 23, 2023. Plaintiff states in conclusory fashion that his detention was unlawful, without providing facts describing the specific nature of his criminal proceedings, why

he believes he was entitled to be released within seven days of his arrest, and what exactly occurred from the day he was arrested, until the day he was released. This claim therefore fails to comply with Rule 8 of the Federal Rules of Civil Procedure, and the Court grants Plaintiff leave to amend this claim.

## G.    Sixth Claim: Involuntary medication

Plaintiff alleges that, at some point – either during his detention on Rikers Island or subsequent to his October 23, 2023 release, he was transferred to Elmhurst Hospital and involuntarily medicated. While the complaint suggests that Plaintiff may be able to state a claim regarding his hospitalization, because forcibly medicating a patient is unconstitutional "absent a finding of overriding justification and a determination of medical appropriateness" by a medical professional, *Riggins v. Nevada*, 504 U.S. 127, 135 (1992); *see Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (recognizing an individual's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment"), Plaintiff does not state when he was hospitalized at Elmhurst, whether he was transferred there from Rikers, or, if he was not transferred from Rikers, how he ended up at Elmhurst Hospital after his release from custody.

The Court declines to grant Plaintiff leave to amend this claim to provide more facts because the proper venue for this claim is likely the United States District Court for the Eastern District of New York. Under the general venue provision, 28 U.S.C. § 1391(b), a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiff does not provide the addresses where the Elmhurst Hospital Defendants reside. Thus, it is unclear whether venue is proper in this District or the Eastern District of New York under Section 1391(b)(1). It is clear, however, that venue is proper in the Eastern District of New York under Section 1391(b)(2) because Elmhurst Hospital is located in Queens County, which falls within the Eastern District. *See* 28 U.S.C. § 112. Thus, the Court dismisses this claim without prejudice to Plaintiff's bringing a claim in the Eastern District of New York. Should Plaintiff reassert this claim here, the Court may, in the interests of justice, sever and transfer the claim to the Eastern District of New York. *See* 28 U.S.C. § 1404(a).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims as set forth above.

**First,** Plaintiff must name as the defendant(s) in the caption[4] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If

---

[4] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all

Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[5] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff is responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires.[6]

**Second,** In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

    a) the names and titles of all relevant people;

    b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

    c) a description of the injuries Plaintiff suffered; and

---

defendants, he should write "see attached list" on the first page of the Amended Complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[5] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty October 1, 2023, at EMTC, during the 7-3 p.m. shift."

[6] Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory

relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## REFERRAL TO PRO SE LEGAL CLINIC

Plaintiff is advised that there is a Pro Se Law Clinic available to assist self-represented parties in civil cases. The Clinic may be able to provide Plaintiff with advice in connection with his case, including assisting him in amending his complaint. The Pro Se Law Clinic is run by a private organization called the City Bar Justice Center; it is not part of, or run by, the Court (and, among other things, therefore cannot accept filings on behalf of the Court, which must still be made by any self-represented party through the Pro Se Intake Unit). An informational flyer and a limited scope legal assistance retainer agreement are attached to this order.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 23-CV-9474 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

19

The Court dismisses Plaintiff's involuntary medication claim, without prejudice to his asserting this claim in a new civil action filed in the Eastern District of New York.

An informational flyer and a limited scope legal assistance retainer agreement are attached to this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to mail this order to Plaintiff's new Rikers Island address, reflected on the docket sheet, and to: 4081 Deremier Avenue Bronx, NY 10466.

SO ORDERED.

Dated:    May 7, 2025
          New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                   Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                Middle Initial               Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 2:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 3:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 4:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
|---|---|---|

| First Name | Middle Initial | Last Name |
|---|---|---|

Prison Address

| County, City | State | Zip Code |
|---|---|---|

Date on which I am delivering this complaint to prison authorities for mailing: _____

# FEDERAL PRO SE LEGAL ASSISTANCE PROJECT
in the Southern District of New York (SDNY)



## HOW TO ACCESS OUR SERVICES

For assistance, please reach out to us via mail at:

**Thurgood Marshall Federal Courthouse**
**CBJC Pro Se Legal Assistance Project**
**40 Foley Sq LL22**
**New York, NY 10007.**



Upon receipt of your letter, we will follow up with application materials.

## ABOUT THE PROJECT

The Federal Pro Se Legal Assistance Project provides limited assistance to self- represented litigants (plaintiffs and defendants) with cases involving civil legal matters in the United States District Court for the Southern District of New York (SDNY).

This project **assists incarcerated litigants** on a variety of federal legal issues, including 1983 matters, civil rights cases, and others.

## HOW WE HELP

Fed Pro provides limited assistance through full-time attorneys, legal support team members, pro bono (volunteer) attorneys, law school/college interns, and a social work team. **While we cannot provide full representation,** Fed Pro can assist individuals by providing limited-scope services such as:

 **Counseling** about potential federal claims prior to filing suit

 **Interpreting and explaining** federal law and procedure

 **Reviewing drafted pleadings** and correspondence with the Court

 Consulting on **discovery** matters

 Assisting with the **settlement** process (including mediation)



**CITY BAR JUSTICE CENTER**

SDNY Federal Pro Se Legal Assistance Project

## <u>LIMITED SCOPE LEGAL ASSISTANCE RETAINER AGREEMENT</u>

This agreement explains the terms of the limited legal assistance that the City Bar Justice Center ("CBJC") has agreed to perform for you through its Federal Pro Se Legal Assistance Projects ("Projects"). Writing your name at the end demonstrates your agreement to the terms herein.

### I.    LIMITS OF ASSISTANCE

The Projects agree to provide only limited scope legal assistance in connection with your matter. This means that:

- You remain a self-represented (pro se) litigant and are responsible for all aspects of your case. CBJC is not your attorney of record in this matter. In the event that you are or become a party to a case in the Eastern District of New York or the Southern District of New York or any other forum, CBJC will not enter an appearance or otherwise act on your behalf without expressly agreeing to do so and entering into a separate signed agreement with you. CBJC has no obligation to enter into any such agreement.

- CBJC has sole discretion to determine the specific type of services provided. These services may include providing advice and counsel about your case, explaining court orders and procedures, reviewing and commenting on your drafts, assisting with drafting, and discussing strategy.

- This retainer covers this consultation only. CBJC can stop assisting you with this matter at any time for any reason consistent with the New York Rules of Professional Conduct.

- CBJC has not agreed to represent or assist you on any other matter in the future. If CBJC does agree to any representation on another matter, then a separate signed retainer agreement will be necessary.

- You may request but are not guaranteed subsequent appointments. CBJC will only provide assistance on subsequent appointments if it provides you with confirmation to you of such assistance, via email or otherwise, with such additional assistance governed by the terms of this agreement, including that the assistance is for that consultation only and that CBJC has sole discretion to decide whether it will provide any additional future consultations.

- You are responsible for and must meet all deadlines in your case, regardless of whether you are able to have an appointment at the Projects in the Eastern District or the Southern District.

## II.     FREE ASSISTANCE, NON-ATTORNEY PROVIDERS, AND COMPETENCY

CBJC does not charge for this assistance. You may be assisted by law students and/or paralegals under the supervision of an attorney consistent with the Rules of Professional Responsibility. CBJC's assistance does not guarantee success or any particular outcome but that CBJC will provide competent assistance.

## III.     TERMINATION OF ASSISTANCE

Your participation is entirely voluntary, and you are free to stop receiving CBJC's limited scope assistance at any time. CBJC may stop providing limited assistance at its sole discretion consistent with the New York Rules of Professional Conduct. If CBJC chooses to stop providing limited assistance, it will provide notice by email, mail, or phone.

## IV.     COSTS OF LITIGATION

Filing a lawsuit or defending against a case when you are sued can involve costs. You are responsible for all costs, including filing fees. The CBJC will not pay for any costs associated with your case. The Court may allow you to proceed without paying filing fees (this is called "proceeding in *forma pauperis*"). Whether you are allowed to proceed in *forma pauperis* is entirely up to the Court.

## V.     CONFIDENTIALITY

CBJC will take all reasonable steps to maintain any information you provide as confidential.

## VI.     REVIEW AND CONSENT

If you have questions or concerns, please leave a voicemail for the Project at (212) 382-4794, and someone will call you back to discuss this agreement.

By signing and writing today's date below, you indicate that you: have had an opportunity to discuss this agreement with CBJC or another Attorney of your choice; have read and understand this agreement; consent to the terms of this agreement; and understand the possible risks and benefits of proceeding with limited scope assistance.

_____ _____                _____
Signature                                                                     Date

**Please mail these completed forms to the City Bar Justice Center, Pro Se Legal Assistance Project, 40 Foley Square, LL22, New York, NY 10007.**



**CITY BAR JUSTICE CENTER**

SDNY Federal Pro Se Legal Assistance Project

Name: _____    Date of Birth: _____

Facility: _____    Identification # _____

**How did you hear about our clinic? (circle one)**

Pro Se Intake Office            Website                Conference/Hearing with the Judge

Pro Se Information Package    Friend/Family        Order/Letter from the Judge

Other: _____

**Do you already have an open case with the federal court? (circle one)**    Yes      No

**If yes, what is your case number?** _____

**If yes, which courthouse is it in? (circle one)**        Manhattan          White Plains

**Ethnicity? (circle one)**

Asian/Pacific Islander        Hispanic                Caucasian

Black                        Middle Eastern          Decline to answer

African                      Caribbean               Other:_____

Native American              South Asian

**Gender?** _____

**Education level? (circle one)**

8th grade or less            GED                    2-4 years of college/vocational school

Some high school             College graduate        Decline to answer

High school graduate         Graduate degree

**Please mail these completed forms to the City Bar Justice Center, Pro Se Legal Assistance Project, 40 Foley Square, LL22, New York, NY 10007.**



**CITY BAR JUSTICE CENTER**

SDNY Federal Pro Se Legal Assistance Project

**Immigration status? (circle one)**

U.S. citizen (born in U.S.)        Naturalized U.S. citizen         Legal Permanent Resident

(Born in:_____)

No lawful status                   Decline to answer              Other:_____

**Marital status? (circle one)**

Single                             Married

Divorced                           Separated

Widowed                            Decline to answer

**Do you have a disability? (circle all that apply)**

No                 Mental health              Vision

Hearing            Mobility                   Memory

Homebound          Decline to answer          Other:_____

**What is your primary language?** _____

**LGBTQ+? (circle one)**          Yes          No          Decline to answer

**Veteran?** _____

**Please mail these completed forms to the City Bar Justice Center, Pro Se Legal Assistance Project, 40 Foley Square, LL22, New York, NY 10007.**